UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE FISHER, et al.,

    Plaintiffs,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____/

Case No. 1:20-cv-302

HON. JANET T. NEFF

**OPINION AND ORDER**

Now pending before the Court is "Defendants'[1] Motion for Partial Dismissal of Plaintiffs' First Amended Complaint under Fed. R. Civ. P. 12(b)(1) and (6)" (ECF No. 27). Plaintiffs submitted a Response in Opposition (ECF No. 32), and Defendants replied (ECF No. 34). For the reasons that follow, the Motion for Partial Dismissal is granted in part and denied in part.

    **I.**    **BACKGROUND**

This case was originally filed in the Ingham County Circuit Court on February 18, 2020. Defendants Michigan Department of Corrections (MDOC), Catherine Bauman, Jeffrey Contreras, Stephen Marschke, Lyle Rutter, and Scott Sprader removed the case to this Court on April 6, 2020.

On April 16, 2020, these Defendants filed a pre-motion conference request (ECF No. 14). Plaintiffs Michelle Fisher, Tracy Gilbert, Shanna Jasmin, and Michelle Svejda then filed a Response (ECF No. 16). The Court found the pre-motion conference request premature and

---

[1] Defendants Michigan Department of Corrections (MDOC), Catherine Bauman, Jeffrey Contreras, Stephen Marschke, Lyle Rutter, and Scott Sprader.

ordered the parties to submit a joint notice to clarify among other matters whether Plaintiffs deemed it necessary to file an amended complaint (Order, ECF No. 19).

In the parties' Joint Statement of Resolved and Unresolved Issues (ECF Nos. 20, 22), Plaintiffs stated that they "do not anticipate the need to file an amended complaint" (ECF No. 22 at PageID.311). Based on the change in status of some of Plaintiffs' claims, however, the Court required Plaintiffs to file an amended complaint that "includes only the claims remaining as to the specific Defendants, as reflected in the Joint Notice and Supplement" (Order, ECF No. 23). On July 20, 2020, Plaintiffs submitted their First Amended Complaint (ECF No. 24).

Plaintiffs Michelle Fisher, Tracy Gilbert, Shanna Jasmin, and Michele Svejda's Complaint alleges claims against Defendants MDOC, Trinity Services Group ("Trinity"), Catherine Bauman, Jeffrey Contreras, Stephen Marschke, Michael Parenteau, Lyle Rutter, and Scott Sprader (*id.*). It contains factual allegations from each of the individual plaintiffs and is pled in nine counts (*id.*).

On September 17, 2020, Defendants MDOC, Catherine Bauman, Jeffrey Contreras, Stephen Marschke, Lyle Rutter, and Scott Sprader filed a partial motion to dismiss (ECF No. 27). The relevant counts on this partial motion to dismiss are Counts IV, V, and VIII:

> Count IV – Retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, Plaintiff Svejda against Defendant MDOC;
>
> Count V – Disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. 701 et seq. and associated regulations, Plaintiff Svejda against Defendant MDOC; and
>
> Count VIII – Constitutional Equal Protection violations under 42 U.S.C. § 1983, the Fourteenth Amendment, all Plaintiffs against Defendants Bauman, Contreras, Marschke, Parenteau, Rutter, and Sprader.

(ECF No. 28; ECF No. 24 at PageID.336-337). For the purposes of determining this motion, Plaintiffs and Defendants Michigan Department of Corrections (MDOC), Bauman, Contreras,

Marschke, Rutter, and Sprader accept the facts as stated in the Plaintiffs' First Amended Complaint (Jt. Statement of Facts ¶¶ 2-3, ECF No. 31 at PageID.372). *See Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020); *Gavitt v. Born*, 835 F.3d 623, 639-40 (6th Cir. 2016).

The Complaint states that Plaintiffs were female employees at the Alger Correctional Facility (the "facility") (ECF No. 24). They allege that they were victims of sexual harassment by Defendant Parenteau, an MDOC employee and correctional officer at the facility, while employed at the facility. They also make claims against Defendant Bauman, "the Warden of the Facility," Defendant Contreras, "the Inspector at the Facility;" Defendant Marschke, "Manager for MDOC Internal Affairs Section;" and Defendant Sprader, "Deputy Warden or the Acting Warden at the Facility" (*id.* at PageID.319).

Plaintiff Svejda, the complainant in Counts IV and V, alleges that she was employed by Trinity as a food supervisor from February 2016 until May 2018 and was later employed by MDOC as a warehouse storekeeper from May 2018 until May 2019 at the facility. She alleges that she was harassed by Defendant Parenteau and told her supervisors about the harassment on several occasions (*id.* at PageID.330-331). She alleges she reported an incident of sexual harassment and Defendant Parenteau's long practice of sexual harassment to her supervisor Corey Steinman and MDOC Captain Ryan Knaus during her employment and that the complaint was escalated to Warden Catherine Bauman, Deputy Warden Scott Sprader, Internal Affairs Manager Stephen Marschke, and MDOC Lieutenant Terry Kienitz (*id.* at PageID.331).

According to the Complaint, MDOC reassigned Parenteau to a different area of the facility, but Plaintiff Svejda still encountered him (*id.* at PageID.332). MDOC investigated Plaintiff Svejda's complaints and concluded the investigation on March 25, 2019 (*id.* at PageID.331-332).

Plaintiff Svejda alleges that as a result of the harassment and because no effective remedy

3

was provided, she was diagnosed with depression and post-traumatic stress disorder and "notified the MDOC Disability Management Unit (DMU) of her condition and its origin" (*id.* at PageID.332). She was placed on unpaid disability leave from April 19 to May 15, 2019; she was also told that "she was just short of working the time period necessary to qualify for leave under the Family Medical Leave Act (FMLA)" (*id.*).

At the end of this leave, as alleged, Plaintiff Svejda contacted her supervisors to seek further resolution of the situation and discuss returning to the facility at the end of the leave (*id.* at PageID.333).

On May 15, 2019, she alleges MDOC DMU called her to instruct her that it needed a medical release form her doctor that day or she would be terminated (*id.*). Because she did not have adequate time to obtain a medical release by the end of that day, after the phone call at 4 p.m., Plaintiff Svejda states that she was terminated on May 16, 2019 (*id.*).

At issue on this motion are Plaintiff Svejda's Count IV retaliation claim and Count V's disability discrimination claim related to the termination. Although the Complaint contains pages of factual allegations, the substance of Plaintiff Svejda's Count IV retaliation claim is limited to a single paragraph, without reference to the elements of such a claim:

> 155. By terminating Plaintiff Svejda, denying her FMLA or other leave time, forcing her to work with her sexual harasser, and otherwise adversely affecting the terms and conditions of her employment, Defendant MDOC unlawfully retaliated against her.

(Complaint ¶ 155, *id.* at PageID.336).

The content of Plaintiff Svejda's Count V disability discrimination claim is similarly laconic:

> 159. Plaintiff Svejda is a qualified individual with a disability. 29 USC 705.

4

> 160. MDOC has a duty to reasonably accommodate Svejda on account of her disability.
>
> 161. By denying Svejda her FMLA or other sufficient leave time, failing to consider any other reasonable accommodation, forcing her to work with her sexual harasser, and terminating her, MDOC violated Svejda's rights under the Rehabilitation Act.

(Complaint ¶¶ 159-161, *id.*).

Also at issue in this motion is Count VIII's equal protection claim made by Plaintiffs Fisher, Gilbert, Jasmin, and Svejda against Defendants Bauman, Contreras, Marschke, Parenteau, Rutter, and Sprader (*id.* at PageID.337).

Plaintiff Fisher was a Trinity food service supervisor at the facility from June 2017 to August 2017 (*id.* at PageID.320). As a result of an incident of sexual harassment by Defendant Parenteau, Plaintiff Fisher alleges she "was too stressed . . . to go to work and told her Trinity supervisor John Styes that she could no longer work there" (*id.* at PageID.322). Plaintiff Fisher was subsequently terminated (*id.*). She filed a complaint with MDOC headquarters in Lansing about Parenteau's sexual harassment after termination (*id.*). She also alleges that another instance of sexual harassment by Parenteau was investigated as part of a different investigation by MDOC Facility Inspector Lyle Rutter and MDOC Internal Affairs Section Manager Stephen Marschke in September 2017 (*id.* at PageID.321).

Plaintiff Gilbert was a Trinity food service supervisor at the facility from July 2016 to March 2017 (*id.* at PageID.323). She alleges that she was terminated because she complained about Parenteau's sexual harassment (*id.* at PageID.326). She alleges specifically that starting in 2016 she reported "Parenteau's sexual harassment multiple times to management, including verbal complaints to her Trinity supervisors Jen Bowers, Styes, and Mr. Trudeau" (*id.* at PageID.324). According to the Complaint, Trudeau and Bowers rebuffed and discouraged her from making

further complaints (*id.* at PageID.325). In March 2017, she also complained to MDOC inspector Jeffrey Contreras about Parenteau's sexual harassment and MDOC Facility Investigator Lyle Rutter and Internal Affairs Manager Stephen Marschke conducted an investigation and concluded that the allegations were unsubstantiated, according to the Complaint (*id.*)

Plaintiff Jasmin was a Trinity food service supervisor from May 2018 to July 2018, and an MDOC food service supervisor from July 2018 to December 2018 (*id.* at PageID.326). She alleges that she "did not independently complain about Parenteau's sexual harassment because she did not believe management would take any substantive action and was afraid she would suffer retaliation if she complained" (*id.* at PageID.328). She resigned from employment at MDOC in December 2018 (*id.*).

> Count VIII alleges in relevant part that:
>
> 176. Defendant Parenteau's sexual harassment of and retaliation against Plaintiffs under color of state law amounts to unlawful discrimination on account of Plaintiffs' sex, a sexually hostile work environment, quid pro quo in violation of Plaintiffs' Fourteenth Amendment equal protection rights.
>
> 177. Defendants Bauman, Contreras, Marschke, Rutter, and Sprader were aware of Parenteau's actions and under color of state law caused, facilitated, and/ or failed to prevent the sexual harassment in violation of Plaintiffs' Fourteenth Amendment equal protection rights.
>
> 178. Defendants Bauman, Contreras, Marschke, Rutter, and Sprader under color of state law retaliated against Plaintiffs in violation of their Fourteenth Amendment equal protection rights.

(Complaint ¶¶ 176-178, *id.* at PageID.338).

In September 2020, Defendants MDOC, Bauman, Contreras, Marschke, Rutter, and Sprader filed a Partial Motion to Dismiss of these three claims (ECF No. 27), Plaintiffs responded (ECF No. 32), and Defendants replied (ECF No. 34). On May 25, 2021, the Court heard argument on the motion (ECF No. 40). The motion is fully briefed, the parties have been heard on the

motion, and the motion is ripe for decision.

## II.   ANALYSIS

### A.  Motion Standard

Defendants move for dismissal on two bases: FED. R. CIV. P. 12(b)(1)—lack of subject matter jurisdiction—and FED. R. CIV. P. 12(b)(6)—failure to state a claim upon which relief can be granted (ECF No. 28 at PageID.357-358).  On a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, disregarding any legal conclusions but accepting as true all of a plaintiff's well-pleaded factual allegations, and determines whether the plaintiff can prove no set of facts supporting the claim that would entitle him to relief.  *See Gavitt*, 835 F.3d at 639-40; *Michigan S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002).  Generally, "[t]o survive a motion to dismiss the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ryan*, 979 F.3d at 524 (quoting FED. R. CIV. P. 8(a)(2)).

The motion involves two dismissal standards.  "Lack of subject matter jurisdiction is an affirmative defense that a defendant may assert in a motion to dismiss."  *Branch & St. Joseph Ctys. Rail Users Ass'n., Inc.*, 287 F.3d at 573 (citing FED. R. CIV. P. 12(b)(1)).  "Challenges to subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules 'are categorized as either a facial attack or a factual attack.'"  *Cooper v. Rapp*, 702 F. App'x 328, 331 (6th Cir. 2017) (quoting *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012)).  A facial attack on subject-matter jurisdiction, as in this case, challenges the sufficiency of the pleadings to invoke federal jurisdiction.  *See Rapp*, 702 F. App'x at 331 (citing *Wayside Church v. Van Buren County*, 847 F.3d 812, 817 (6th Cir. 2017)).

"'[T]he party asserting federal jurisdiction when it is challenged has the burden of establishing it.'" *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). The bar is not high; the plaintiff will survive the motion to dismiss by showing any arguable basis in law for the claims set forth in the complaint. *See Branch & St. Joseph Ctys. Rail Users Ass'n., Inc.*, 287 F.3d at 573 (internal quotations and citations omitted).

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate where the complaint fails to state a claim upon which relief can be granted. Ultimately, "the defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014). "[T]he complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Schwamberger v. Marion Cty. Bd. of Elections*, 988 F.3d 851, 856 (6th Cir. 2021) (internal quotations and citations omitted).

Although the Court reads the Complaint generously, it does not presume facts not alleged therein. *See Schwamberger*, 988 F.3d at 856 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Court also "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks and citation omitted). "While the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" *Ryan*, 979 F.3d at 524 (quoting *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Columbia Nat. Res., Inc.*

*v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (emphasis original) (internal quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.  Discussion

**1.  Count IV: Retaliation Claim in Violation of Title VII of the Civil Rights Act—Plaintiff Svejda against Defendant MDOC**

Defendant MDOC argues that Plaintiff Svejda has not pled a required element of her Title VII retaliation claim because she has not pled a causal connection between her protected activity, the sexual harassment complaint(s), and an adverse employment action taken against her (ECF No. 28 at PageID.357-358).  "Plaintiff must allege far more to establish the 'reasonable inference'" that her protected activity prompted the denial of the FMLA request and termination, according to Defendant MDOC (*id.*; ECF No. 34 at PageID.405, citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Plaintiff Svejda responds that the inference that her complaints of sexual harassment caused her termination is based on the temporal proximity of the events she alleged in her Complaint (ECF No. 32 at PageID.390-391).  Although she made complaints about Parenteau as early as March 2018, her relevant complaints concerning sexual harassment and a safe workplace were made directly to MDOC management in October 2018 and between May 8-16, 2019, as alleged (*id.* at PageID.390).

According to Plaintiff Svejda, after she was placed on unpaid disability leave from April 19, 2019 to May 15, 2019 as a result of her diagnosed depression and post-traumatic stress disorder from being forced to work with her harasser, MDOC DMU called her on May 15 and notified her that she needed to provide a medical release form on that day or suffer termination (*id.* at

9

PageID.391). Plaintiff argues that given the short-notice and suspicious timing of events there is a "likelihood that the reasons stated for her termination were pretextual and she was actually terminated in retaliation for filing complaints" (*id.* at PageID.390-391, *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009)).

Defendant MDOC replies that temporal proximity alone will not suffice to support an inference of causality when there is no other compelling evidence of retaliatory discrimination, particularly where Plaintiff Svejda "was denied FMLA leave because she did not qualify and the requirement that she produce medical release documentation are standard procedural matters that are unrelated to her harassment complaint" (ECF No. 34 at PageID.405, citing *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008)).

The Court finds that Plaintiff Svejda has plausibly alleged a claim for unlawful retaliation. The parties agree that to establish a *prima facie* case of unlawful retaliation based on indirect evidence under Title VII, 42 U.S.C. § 2000e-3(a), Plaintiff must show that (1) she engaged in protected activity under Title VII; (2) Defendant was aware of this activity; (3) she faced an adverse employment action by Defendant; and (4) there was a causal connection between the protected activity and the adverse employment action (ECF No. 28 at PageID.357; ECF No. 32 at PageID.39). *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). At the motion-to-dismiss stage, Plaintiff Svejda does not have to establish all the elements of a prima facie case of retaliation to avoid dismissal; instead Plaintiff must state only a facially plausible claim for relief. *See Crowder v. Railcrew Xpress*, 557 F. App'x 487, 492-93 (6th Cir. 2014). To withstand Defendant's motion to dismiss, Plaintiff Svejda's Complaint must contain "sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that MDOC retaliated against Plaintiff Svejda because she complained about Parenteau's sexual

harassment. *See id.* at 493; *e.g.*, *Wright v. Gen. Engine Prod., LLC*, No. 1:19-CV-885, 2020 WL 2526123, at *4 (S.D. Ohio May 18, 2020) (applying the standard to deny the motion to dismiss because the Court finds plaintiff's complaint states a plausible claim for retaliation).

The parties dispute whether the Complaint raises the inference of causation, where "an inference of causation may arise solely from the closeness in time between the point at which the employer learns of an employee's protected activity and the point at which it takes an adverse action against that employee." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 664 (6th Cir. 2020) (internal quotations omitted). According to the Complaint, Plaintiff Svejda reported an alleged incident of sexual harassment by Defendant Parenteau to her supervisor Corey Steinman and MDOC Capitan Ryan Knaus in October 2018 (ECF No. 24 at PageID.331). The MDOC opened an investigation into Parenteau and closed the investigation on March 25, 2019 (*id.* at PageID.332).

As her leave time came to an end, however, she expressed concerns to MDOC management that it was unsafe and unreasonable to return to the facility because her harasser was still at the facility and she would encounter him (*id.* at PageID.333). She alleges that as late as May 8, 2016 she contacted Deputy Warden Sprader with her concerns; on May 14 she contacted MDOC Director Heidi Washington; and she called MDOC DMU multiple times with these concerns (*id.*).

Plaintiff Svejda also alleges that the reason MDOC gave for terminating her was pretextual (ECF No. 32 at PageID.391) because MDOC DMU knew it was impossible for her to obtain a medical release form on May 15 after MDOC DMU called her at approximately 4 p.m. on May 15 and requested that she supply the form that day or immediately suffer termination (ECF No. 24 at PageID.333).

In light of these facts, the Court finds that Plaintiff has made out a plausible claim for relief.

The concerns Plaintiff Svejda expressed to MDOC on May 8, 2019 and May 14, 2019 could be construed as protected activity because Plaintiff reasonably believed she was engaging in protected activity under Title VII. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000). Thus, Plaintiff Svejda has sufficiently alleged facts that the adverse employment action was close enough in time to draw an inference of retaliatory motive. *Yates*, 578 F.3d at 419 (collecting cases, analyzing instances of two-days to three months for a causal connection based on temporal proximity).

Even if Plaintiff Svejda's October 2018 complaint was the last protected activity Plaintiff Svejda engaged in, "a court may still draw an inference of causation where the defendant took advantage of its first meaningful opportunity to retaliate against the plaintiff, even if that opportunity did not arise until several months after the plaintiff's protected conduct." *Kirilenko-Ison*, 974 F.3d at 665. Plaintiff's Complaint thus contains sufficient factual content from which this Court could draw the reasonable inference that Defendant retaliated against Plaintiff for complaining and continuing to complain about the provision of safe work conditions. The motion to dismiss this count is denied.

**2.     Count V: Disability Discrimination in Violation of the Rehabilitation Act—Plaintiff Svejda against Defendant MDOC**

"The Rehabilitation Act prohibits recipients of federal funds from retaliating against an employee who has filed a complaint against the employer about disability discrimination or has requested a 'reasonable accommodation' for his or her disability." *Ellis v. Tennessee*, 603 F. App'x 355, 359 (6th Cir. 2015). To state a disability discrimination claim under the Rehabilitation Act Plaintiff must allege facts sufficient to plausibly allege that she (1) is disabled, (2) is otherwise qualified to perform the essential functions of their position, with or without a reasonable accommodation, and (3) suffered an adverse employment action *solely because of* her disability.

*See Mitchell v. United States Postal Serv.*, 738 F. App'x 838, 843 (6th Cir. 2018) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)); *Doe v. BlueCross BlueShield of Tennessee, Inc.*, 926 F.3d 235, 241 (6th Cir. 2019).

Defendant MDOC argues that Plaintiff Svejda has not articulated a claim under the Rehabilitation Act for denial of a reasonable accommodation or failure to accommodate[2] because no request for reasonable accommodation was made or alleged, the claim is premised entirely on the MDOC's denial of FMLA leave, and the Eleventh Amendment immunity bars suits against the State of Michigan under the FMLA (ECF No. 28 at PageID.359-360; ECF No. 34 at PageID.406).

Plaintiff Svejda responds that she stated sufficient facts under the Rehabilitation Act to make out a plausible claim for unlawful discrimination because she is disabled, qualified to perform the job requirements with a reasonable accommodation, and Defendant MDOC should have provided her with additional time off or temporary leave as a reasonable accommodation based on her disability (ECF No. 32 at PageID.392). According to Plaintiff Svejda, Defendant MDOC should have provided Plaintiff Svejda with leave under either the FMLA or the RA – "[a]n employer must . . . provide leave under whichever statutory provision provides the greater rights to employees" (*id.* at PageID.393, quoting 29 C.F.R. § 825.702(a)). Because Defendant MDOC unlawfully denied her FMLA leave, Plaintiff Svejda asserts, Defendant MDOC should have provided her with a reasonable accommodation under the Rehabilitation Act, and MDOC should not have taken adverse action against her solely due to her disability (*id.* at PageID.392, citing

---

[2] Plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified for the position; (3) the employer knew or had reason to know of plaintiff's disability; (4) an accommodation was needed because a causal relationship existed between the plaintiff's disability and his request for accommodation; and (5) the employer did not provide the necessary accommodation. *See DiCarlo v. Potter,* 358 F.3d 408, 419 (6th Cir. 2004)).

*Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Plaintiff Svejda further argues that the Eleventh Amendment does not bar suits brought under Sec. 504 of the Rehabilitation Act (*id.*, citing 42 U.S.C. § 2000d-7).

In reply, Defendant MDOC maintains that Plaintiff's argument is fruitless because it "cannot improperly deny something that was never requested"—namely a reasonable accommodation—thus the claim must be dismissed (ECF No. 34 at PageID.406).

The Court agrees with Defendant MDOC that there is a pleading problem with this claim. The Complaint does not allege that Plaintiff Svejda requested a specific accommodation or that she suffered an adverse employment action solely-because-of her disability.[3] *See Kocsis v. Multi– Care Mgmt.,* 97 F.3d 876, 883 (6th Cir. 1996) (denial of a reasonable accommodation claim must fail if disabled employee did not request a reasonable accommodation); *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011) ("an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations"); *see Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 241 (6th Cir. 2019) (quoting 29 U.S.C § 794(a)) (§ 504 of the Rehabilitation Act only prohibits discrimination "solely by reason of" disability, it "does not encompass actions taken for nondiscriminatory reasons"). While the Complaint does state that the facility was "unsafe" and it would be "unreasonable" for Plaintiff Svejda to return to the facility because she would be "forc[ed] to work with her harasser" and Defendant "MDOC had a duty to

---

[3] To the extent that Plaintiff Svejda's request for FMLA leave could be construed as a request for a reasonable accommodation, Plaintiff has not adequately pled that the FMLA leave request is a reasonable accommodation. *See, e.g.*, *Schobert v. CSX Transportation Inc.*, 504 F. Supp. 3d 753, 788 (S.D. Ohio 2020) ("in order to plead that a FMLA leave request is a reasonable accommodation (and that punishing an employee for using such leave is retaliation under the Rehabilitation Act), a plaintiff will have to plausibly assert that: (1) the employee requested FMLA leave; (2) to address a protected 'disability' not just a 'serious health issue;' and (3) that FMLA leave would allow the employee to continue to perform the essential functions of his or her job").

reasonably accommodate Svejda" (ECF No. 24 at PageID.334),  it does not state what if any request was made for additional leave time or for an accommodation.  *See Benaugh v. Ohio Civil Rights Com'n*, 278 F. App'x 501, 509 (6th Cir. 2008) ("the proposed accommodation of essentially an allergen-free workplace was too vague to inform the defendant of what was needed").  It does not plainly allege that Plaintiff Svejda's disability—which is not clearly delineated—was the sole cause of her terminated.  Therefore, the Court grants the motion to dismiss this claim.

3. **Count VIII: Equal Protection Violation under 42 U.S.C. § 1983—All Plaintiffs Against Defendants Bauman, Contreras, Marschke, Parenteau, Rutter, and Sprader**

The Equal Protection Clause "prevents states from making distinctions that: (1) burden fundamental rights; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).  Plaintiffs allege a supervisory-liability theory under 42 U.S.C. § 1983 against the MDOC officials.[4]

"A supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. [The Sixth Circuit] interpret[s] this standard to mean that at a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal quotation marks omitted) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *Coley v. Lucas Cty.*, 799 F.3d 530,

---

[4]  Plaintiffs' theory of liability under § 1983 as to Defendant Parenteau was not discussed in Plaintiffs' Response (ECF No. 32) and there was confusion at the hearing as to whether Defendant Parenteau was named or incorrectly named in Count VIII as a defendant because he did not have supervisory authority and was merely an employee of MDOC.  To the extent a claim is alleged against Defendant Parenteau in Count VIII, the claim is dismissed for the same reasons as claim is dismissed against the other Defendants.

15

541-42 (plaintiff states a claim for § 1983 supervisory liability based on supervisor's failure to properly investigate plaintiff's allegations).

Defendants argue that the Court should dismiss the equal protection claim because there is no allegation in the Complaint that Defendants, Plaintiffs' supervisors, intentionally discriminated against Plaintiffs based on their membership in a suspect class (ECF No. 28 at PageID.360-361). According to Defendants, there is also no allegation that Defendants were deliberately indifferent to discrimination or that any action was taken based on sex animus, since Defendants were not even aware of any alleged harassment with respect to Plaintiffs during their employment (with the exception of Plaintiff Svejda): Plaintiff Fisher was never an employee of MDOC and never complained of harassment until after she was terminated; Plaintiff Gilbert was never an employee of MDOC and only reported the harassment after she was terminated; and Plaintiff Jasmin never complained of harassment to anyone at MDOC (*id.* at PageID.362; ECF No. 34 at PageID.406).

Defendants also assert that they are entitled to qualified immunity because Defendants did not take any action in their personal capacities that was motivated by sex animus that would give rise to a claim for civil damages, and Defendants have not violated a clearly established statutory or constitutional right (*id.* at PageID.363, citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

Plaintiffs respond that they sufficiently alleged that Defendants with supervisory and investigative authority are "liable for conducting inadequate investigations or negatively affecting an employee's terms and conditions of employment under motivation to violate their protected rights" (ECF No. 32 at PageID.394, citing *Poe v. Haydon*, 853 F.3d 418, 433 (6th Cir. 1988)). They argue that they alleged that Defendants "implicitly authorized" and "knowingly acquiesced" in Parenteau's harassment because Plaintiffs made repeated complaints to Defendants about Parenteau's sexual harassment, and Defendants failed to investigate these complaints or grossly

16

mishandled the investigations (ECF No. 32 at PageID.395, quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  Because the complaints were "gender-based and made only by women," "there is a strong inference that Defendants were motivated by gender-based animus in violation of Plaintiffs' rights," Plaintiffs emphasize (*id.* at PageID.396).

Plaintiffs also respond that Defendants cannot shield themselves behind the doctrine of qualified immunity because Plaintiffs have sufficiently alleged facts to establish that Defendants violated Plaintiffs' constitutional rights to be free from workplace sexual harassment and that this constitutional right is clearly established such that a reasonable person in Defendants' supervisory or management positions would know that the failure to prevent or investigate repeated conduct and complaints was unlawful (*id.* at PageID.398).

Defendants reply that since Plaintiffs Fisher, Gilbert, and Jasmin never complained to MDOC during their employment, it was impossible for Defendants to "implicitly authorize" or "knowingly acquiesce" in the alleged conduct (ECF No. 34 at PageID.407).  Further, Defendants contend that Plaintiffs do not deny that the complaints were investigated and responded to; the fact that the complaints were investigated and received a response does not show that anyone knowingly violated the law (*id.* at PageID.408, citing *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000)).

The Court has reviewed the Complaint and Defendants are correct that Plaintiffs Jasmin and Fisher did not complain of sexual harassment during their employment.  Thus, the Court will dismiss their claims.  With respect to Plaintiffs Svejda and Gilbert: the Complaint does not plausibly allege how (1) each and all of Defendants Bauman, Contreras, Marschke, Rutter and Sprader knowingly acquiesced in the unconstitutional conduct of Defendant Parenteau; and (2) plausibly allege that there is a causal connection between each individual Defendant's "acts and

17

omissions" and the constitutional violation. *See Peatross*, 818 F.3d at 242, 244 (complaint specifically alleged that defendant "was involved at least in part in creating and enforcing all department policies; that he did not punish officer misconduct, including the use of excessive force; that he failed to take action in the face of the growing use of excessive force by officers and admonishment from the Mayor on the issue; and that he 'rubber stamped' officer misconduct"); *Campbell v. City of Springboro*, 700 F.3d 779, 790 (6th Cir. 2012) (on summary judgment; even though a police chief had not been actively involved in the incidents causing the plaintiff's injury, he could not claim qualified immunity because *the record suggested* that there was a causal connection between his acts and omissions and the alleged constitutional injury).

As Defendant argued at the hearing, the Complaint does not provide a basis for considering the relative position of Defendants to Parenteau or Defendants' roles with respect to any investigation or potential investigation and Plaintiffs; thus the Complaint has not plausibly alleged how Defendants were responsible for the constitutional violation. *See Peatross*, 818 F.3d at 241, 246 (supervisory liability requires an allegation of "active unconstitutional behavior" on the part of the supervisor) (citing *Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 681 (6th Cir. 2011) ("When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint adequately alleges the commission of acts that violated clearly established law").

42 U.S.C. § 1983 seeks to hold supervisory officials accountable where they exercise power irresponsibly, and here there are no specific allegations in the Complaint that any of the government officials with supervisory responsibility personally allowed or ratified conduct that perpetuated sexual harassment against women. *See Peatross*, 818 F.3d at 246; *Coley,* 799 F.3d at 542 (denying motion to dismiss where complaint alleged that defendant supervisor failed to

18

investigate allegations of excessive force properly and attempted to cover up homicide by law enforcement officers by making false statements to federal officials) ("A claim is facially plausible when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (internal quotations and citations omitted). Because Plaintiffs do not connect the factual allegations to any of the specific Defendants, the motion to dismiss this claim is granted.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' "Motion for Partial Dismissal of Plaintiffs' First Amended Complaint under Fed. R. Civ. P. 12(b)(1) and (6)" (ECF No. 27) is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED** that Count V of the First Amended Complaint (ECF No. 24) is DISMISSED.

**IT IS FURTHER ORDERED** that Count VIII of the First Amended Complaint (ECF No. 24) is DISMISSED.

**IT IS FURTHER ORDERED** that Defendants shall within 14 days of the date of entry of this Opinion and Order file their answers to the First Amended Complaint (ECF No. 24).

Dated:  August 12, 2021                                     /s/ Janet T. Neff
                                                                             JANET T. NEFF
                                                                             United States District Judge